[Civ. No. 843. Fourth Appellate District.—April 8, 1933.]

GEORGE A. RANKIN, Respondent, v. H. H. BROWN et al., Appellants.

Siemon & Garber, Alfred Siemon, and T. R. Claflin for Appellants.

Borton & Petrini for Respondent.

BARNARD, P. J.—This is an appeal from a judgment in favor of the plaintiff in an action brought to foreclose a mortgage in which the defense is based upon the fact that the makers of the mortgage never received the money represented thereby.

In the fall of 1928, the appellants, for the purpose of completing a building they were erecting, applied to the First National Bank in Bakersfield for a loan of $25,000, proposing to draw the money from time to time as they needed it, and to pay interest thereon only as the money was used. The application was referred by the bank to its discount committee, one member of which was a man named Fitzgerald, a director in the bank, who was also the manager of a building and loan association in the same city. The bank desired to accommodate the appellants but felt unable to do so, and Fitzgerald stated that he thought he could get them a private loan. Shortly thereafter, Fitzgerald called upon the appellants, who knew he was connected with the bank, and "seemed to know all about the loan and what the terms were". Fitzgerald then called upon the respondent who had $25,000 to loan and, at his suggestion, the respondent went to see the appellants. The respondent refused to make the loan on the terms desired since he wanted interest paid on the full amount from the beginning, and the parties separated with the understanding that the transaction was terminated. Soon thereafter Fitzgerald again went to the respondent telling him that the money could be paid "to us and we will use it until Mr. Brown is ready for it and then we will pay the interest on it until then and he will pay it from then on". The respondent stated that he did not wish to make the loan that way, that he wanted to loan it to and have it secured by one or the other of them, but that he did not want to look first to one and then the other. Fitzgerald replied that this was the proposition and that the respondent was to pay them the money and they would use it until the appellants were ready for it, and they would settle the interest between them. Shortly thereafter Fitzgerald went to the appellants and told them he could get the money from the respondent and that "you just give me the papers and I will fix it all up and you won't have to pay any interest until you draw the

money out of the bank, and it will be in the bank when you want it". Either then or soon after that the appellants signed the note and mortgage and delivered them to Fitzgerald.

The respondent went to Fitzgerald's office and paid him $25,000 in currency. Fitzgerald told him that he had the papers all ready and would give him the note and mortgage as soon as the mortgage was recorded, and gave him a receipt for the money. As soon as the mortgage was recorded he delivered it to the respondent. The mortgage was recorded on October 8, 1928, and shortly thereafter the respondent told the appellants that he had paid the money in currency to Fitzgerald. Early in November the appellants wanted to use some of the money and called upon Fitzgerald for the same. Thereupon, Fitzgerald brought to them a note for $10,000 payable to the First National Bank in Bakersfield, explaining that they were not paying interest on the $25,000 until they began to draw on it, that they could use this $10,000 before drawing on the other money, and that when they began drawing the other money they could repay this $10,000 out of the first money drawn. The appellants signed this note and received that amount from the bank. At the time of signing this note they knew that it was payable to the bank, that the bank was loaning them that amount, that they were paying interest on it, and that the respondent had theretofore handed the original $25,000 to Fitzgerald. When the appellants received the $10,000 they told Fitzgerald they would probably want another payment in about a month, to which Fitzgerald replied: "Call me up three or four days before you want it". About the first of December the appellants wanted more money and called upon Fitzgerald. They were told he was out of town. They called again and "could not get any satisfaction". The appellant husband testified: "I could not see him at all, and the next thing I knew he was in bed with the flu, so I was told, for two weeks, and I called— in the meantime I called him over the phone and I said, 'I need this money to meet these payments.' 'Well,' he says, 'You won't have to pay interest, it will be all right'. He kept setting time, time and time again when it would be available, and he disappointed me every time, until it ran along way up in January and then I went after him, and I

went after him good. I went out to his house and saw him, and he says, 'Well that money will be there day after tomorrow, it will be there'." Shortly thereafter, Fitzgerald disappeared and it is conceded that he embezzled the money and that the same was never paid by him to the appellants.

While this is a hard case in the sense that a large loss must fall upon one of two innocent parties, and while it has been most ably argued by counsel on both sides, we feel that the decision of the trial court on a question of fact is controlling here. As conceded by appellants, the principal question to be decided is whether or not Fitzgerald had been authorized by the appellants to receive from the respondent the money in question. The trial court found that the respondent paid over and delivered $25,000 in cash to a person authorized and empowered by the appellants to receive said sum, and that this was done in consideration of the execution and delivery of the note and mortgage. While the appellants attack this finding as being no more than a conclusion of law it must be held sufficient in view of the language used in the pleadings and the form in which the issues were presented. The principal question before us then is whether or not the evidence sustains the finding and conclusion that Fitzgerald had been authorized by the appellants to receive the money.

The appellant E. H. Brown testified that Fitzgerald told them he could get "that money" from the respondent; that he said, "We can get that money and you make out the mortgage and let me have the papers and I will fix it all up and you make the mortgage to Rankin and the money will be in the Bank and there will be no other expenses. He says 'you just give me the papers and I will fix it all up and you won't have to pay any interest until you draw the money out of the Bank, and it will be in the Bank when you want it'"; and that they gave him the papers. The appellant H. H. Brown testified as follows: "Q. In other words you understood when you gave Fitzgerald your note and mortgage, that Fitzgerald, in whatever capacity he was acting, to go and get that money from Rankin? A. I did not know he was going to get it. I supposed that money was to be placed in the bank because he said that was where I would find it when I wanted to use it. Q. That is what Mr. Fitzgerald said? A. Yes. Q. And you gave Mr. Fitz-

gerald the note and mortgage? A. Why certainly, we had to secure somebody for the money. Q. And you noticed, did you not, that the note and mortgage was made out to Mr. Rankin when you signed it? A. Well, I know it reads that way, but I don't remember that note at all. I have racked my brain lots and I don't remember that we ever signed that note, but it looks like our signatures and we probably did. Q. But you do remember signing the mortgage? A. Yes. Q. You noted the mortgage was made out to Rankin? A. Yes. Q. Yet you gave it to Fitzgerald? A. Well as a representative of the bank I would have to give it to somebody when I borrowed the money. Q. But you gave it to Fitzgerald assuming he was a representative of the bank? A. Certainly. Q. And you intended, did you not, that Fitzgerald, if you please, as a representative of the bank, should deliver the note and mortgage to Rankin and get the money? A. Well he told me to have it made out to him and they would have the money in the bank. Q. As I understand you, Mr. Brown, while you intended that note and mortgage to go to the bank, yet you delivered them to Fitzgerald as a representative of the bank—that was your understanding and your purpose? A. Sure, I did not dream the bank was not back of it. Q. While you intended the money to come to the bank, you intended it should be obtained by Fitzgerald as a representative of the bank, did you not? A. Why, yes, he is the one that was sent out to do the business.''

He further testified: ''When I signed the mortgage and turned it over to Fitzgerald he said, 'You don't want this money'—I had told him that I did not want it for a while, that I was not ready for it, and he says, 'Well, when you want it, you tell me,' and I says, 'will I go to the Bank or will I tell you', and he says, 'You call me.' Q. He said that, at that time?—you asked him whether you should go to the bank to get the money, and he says, 'No, you come to me.' A. He says, 'No you call me,' and when I did want it, he brought the ten thousand dollar note over.''

The subsequent acts of the appellants also throw some light upon the situation. It appears that when they wanted to use the first part of the money they not only went to Fitzgerald instead of to the bank, but accepted his suggestion that they borrow $10,000 from the bank and leave this money

untouched until the next installment was desired. At the same time they told Fitzgerald they would want more money in about a month and he told them to call him up several days before they wanted it, which, in connection with the $10,000 loan transaction, is strongly suggestive of a situation inconsistent with appellants' present position that Fitzgerald had no authority to receive or hold the money, and that he was only authorized to have the respondent place it in the bank where it would be available to them at any time. It further appears that when next they desired to use the money they not only went to Fitzgerald but waited several weeks for him to make the money available.

Conceding that the evidence would have sustained a finding to the effect that the appellants did not authorize Fitzgerald to receive the money, but only authorized him to have the respondent place the money in the bank, it fully sustains the finding made and justifies the inference drawn by the trial court that the appellants not only authorized Fitzgerald to receive the money from the respondent, but depended upon him to have it available for them when they wanted to use it. In fact portions of the evidence indicate not only that the appellants realized that Fitzgerald was not going to place the money in the bank at once but that they acquiesced in and virtually assented to such a course. While their confidence in Fitzgerald was misplaced, they were in no way injured by anything the respondent did and everything was done in accordance with both their expectation and their authorization until some time after the respondent had completed his part in the transaction. The respondent made Fitzgerald his agent for the purpose of obtaining the note and mortgage and recording the same. At the same time the appellants made Fitzgerald their agent for the purpose of taking the note and mortgage and obtaining the money from the respondent, and at some later date placing the same in the bank. Having authorized their agent to receive the money, the loss occasioned by his subsequent act must fall upon the appellants and not upon the respondent.

Appellants rely upon certain authorities wherein it has been held that the presence of unusual conditions places upon one dealing with an agent the burden of investigating as to whether these conditions are within the authority of the agent. It is argued that such a duty to inquire of

the appellants, as to the extent of the authority given by them to Fitzgerald, was imposed upon the respondent by the unusual circumstances here present, and especially since it appeared that either Fitzgerald or some party unnamed was to use the money, and benefit thereby, during the interim before it was wanted by the appellants. Any notice of lack of authority could only be material where such authority does not, in fact, exist. The evidence here is sufficient to show that authority to receive the money had been given. It neither appears that any further investigation on the part of the respondent was required nor that the same would have availed anything had it been made, as the appellants intended that the respondent should pay the money to Fitzgerald. Whether or not the appellants assumed that Fitzgerald was also representing the bank makes no difference as far as the respondent is concerned, and in any event they authorized him to receive the money. The subsequent fraud of Fitzgerald was made possible by the appellants' misplaced confidence in him rather than by anything done by the respondent.

While we think that this case is determined upon appeal by the finding, supported by the evidence, that the appellants authorized Fitzgerald to deliver the note and mortgage and to receive the proceeds thereof, it would seem that the same result would follow if the familiar rule were applied that where one of two innocent persons must suffer, the loss must fall upon the one whose negligence enabled it to happen. The appellants delivered the note and mortgage to Fitzgerald with the expectation that he would use them to obtain the money from the respondent; they left the matter open as to just when it should be placed in the bank; they acquiesced in Fitzgerald's statement that they should go to him and not to the bank when they desired the money; they were early told that the money had been paid to Fitzgerald; they accepted his subterfuge when they first wanted part of the money in December, even to the extent of giving a new note for $10,000; and even after that, they continued, until some time in January, to expect him to make the money available to them. Any negligence leading to the loss disclosed by these unusual circumstances appears to have been that of the appellants rather than that of the respondent.

Certain rulings of the court on the admission of evidence are also attacked. While we have examined these, we find no prejudicial error therein.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 8, 1933, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 1, 1933.

Curtis, J., and Langdon, J., dissented.